Day, J.
It is conceded that the city of Cincinnati is indebted to George Bearly, as contractor for work and materials in erecting the building mentioned, in the sum of $1,377. The amount so due to him is claimed by his subcontractors, under the provisions of the “ act to create a lien in favor of mechanics and others in certain cases ” (S. & C. 833), and Bearly admits that their claims, as against *142 him, are just and due; the controversy, therefore, relates solely to the distribution of the' fund between them.
The amount due to Rankin & Co. from Bearly is greater than the amount due tó him from the city. They claim that they filed their attested account with the city before any of the other sub-contractors, which gives them the priority, and entitles them to the whole fund.
Dunn & Witt.claim that they filed their attested account with the city at the same time with Rankin & Co., and so are entitled to their proportionate share of the fund with them, to the exclusion of the other sub-contractors who filed their attested accounts at a later date.
The Greenlees & Ransom Co. and Edwin Long claim they are entitled to the whole fund, in proportion to their several accounts, on the ground that the amount due to Bearly from the city is for extra work and materials, not embraced in the school-house contract, a part of which extra work and materials constitute the whole amount of their accounts; while those of the other sub-contractors are included in the specifications and contract for building the school-house.
The first question to be considered, then, is, whether the fund in dispute arises upon one contract or different contracts between the owner and contractor; for, under the statute, the claim of the sub-contractor against the owner of the structure is, by fair’construction, limited to the work and materials furnished in performing a particular contract between the owner and contractor; also to the amount due on said contract at the time he delivers to the owner his attested account against the contractor for such woi’k and materials. . If there be distinct jobs of the kinds enumerated in the statute, under separate contracts, though under contracts between the same owner and contractor, the liens of the sub-contractors are respectively confined to the amount due on the contract each one aided the contractor to perform; the same as it would be if the owner had contracted each job to a different contractor; for the policy of the statute is not to give a general lien to *143 the sub-contractor, but to give him a right to the fund to which his own labor or materials have contributed.
In June, 1869, the city, through its duly authorized agents, contracted with Bearly to build a school-house for $81,000, in accordance with detailed plans and specifications, including a brick privy. About a year afterward, it was determined to build another privy, to be constructed of wood. This structure not being expressly included in the specifications or provisions of the school-house contract, new plans and specifications for this work were submitted to Bearly, who proposed to do it for $463. His proposition was accepted, and a contract was entered into with him accordingly.
It is claimed that inasmuch as “ changes ” in the “ plans and specifications,” which are made part of the original contract, are provided for in that instrument, this new structure is embraced therein, and must be regarded as erected under that contract. But the new privy was not a change in the original plans. It was a new building, and, although an appurtenance to the main edifice, it was a distinct and separate structure, erected under another contract than that of the other buildings, as much as it would have been had the new job been contracted for by another person. The amount agreed to be paid Bearly for the frame privy remains unpaid, and, in accordance with the principle already stated, his sub-contractors, to the extent their work and materials went into that structure, may acquire a lien thereon pursuant to the statute, while those who contributed ouly to the other building can not.
The balance of the amount in controversy is due to Bearly for extra work and materials that w,ent into the principal building, as to which there was no contract other than the original one, and this work may fairly be regarded as embraced in the “ changes ” provided for in that contract. A lien may therefore be acquired upon the balance so due by the sub-contractors who did work or furnished materials in performance of the original school-house contract, and including the extra work in completion thereof.
*144 The Greenlees & Bansom Co. and Edwin Long were the only sub-contractors who did or furnished any thing toward the erection of the frame privy. The other parties, therefore, can acquire no lien, under the statute, to that part of the fund due for that structure; and that part of the amount due to the Greenlees & Bansom Co. and to Long, in excess of what is due to them for work and materials which went into the building erected under the new contract, falls into the same condition with that of the other sub-contractors.
The next question to be considered relates to the priorities between the sub-contractors upon that part of the fund due to Bearly upon the original contract. It is claimed that, as between sub-contractors, there is no priority. But it has been settled that, as the statute stood at the time this transaction arose, those first in time in delivering their attested accounts to the owner were prior in right. Copeland v. Manton, 22 Ohio St. 398.
We must then determine whose account was first delivered to the owner in compliance with the statute; and here the contest is only between Ransom & Co. and Bunn & Witt, for the notices of all the others were subsequent to theirs, and the priorities under the latter notices are not questioned.
All the notices were left at the office of the clerk of the board of education. Bankin & Co. left their notice or attested account at the office on the morning of the 18th of August, 1870. The clerk was then absent from the city, but the office was in the care of an employe, who attended to all matters that did not require the official action of the clerk. The clerk returned to the office in the morning of August 22, 1870, and Bunn & Witt deposited their claim in the office at five o’clock p. m. of that day. Both claims were read to the board of education in the evening of the. same day.
It is claimed, in behalf of Dunn & Witt, that neither party obtained any lien until the board of education was notified of their claims, and that their notices to the board *145 being simultaneous, tliey are equal in right as to the fund in dispute. On the other hand, it is claimed, on behalf of Ransom & Co., that a lien was fixed thereon by their notice to the clerk of'the board, which they claim was prior to that of all others.
Without determining whether the leaving of an attested account at the office of the clerk was sufficient to create a claim against the city under the statute, we think that, under the circumstances of this case, it was sufficient for that purpose to deliver it to the clerk, for a corporation was the owner, and could know or act only through its duly constituted officers or agents. It is true the board of education was invested with general authority as to all matters appertaining to pnblic school buildings; but it appears that in this instance the clerk of the board was authorized by the board, with the concurrence of the city authorities, to enter into this contract in his own proper name, and was expressly authorized by the contract, on notice to the board by the sub-contractors, to settle with them directly all their claims against the contractor arising under the contract. Thus all the parties connected with the contract, under which these claims arise, recognize' the board of education, and its clerk as. the practical agencies to deal with in regard to any claim that may become due under the contract, and they agree upon the clerk of the board as the disbursing officer or agent under the contract for both the board and the city. He therefore became a proper agent of either corporation to receive the notices of the sub-contractors as the person standing in the position of the owner as to the amount due to Bearly under the contract. Notice to any other agency or officer of these corporations could not as effectually stop payment to the contractor, which is the first thing to be done to accomplish the purpose of the statute, — to secure the sub-contractor and at the same time protect the owner.
Undoubtedly, the claim of a sub-contractor can be charged upon the owner only in the way prescribed by the *146 statute — by delivering his attested account against the contractor to the owner. But when the owner is a corporate on, the delivery of such account to the person whom the corporation has authorized to be its representative or active agency to act in the special matter arising under the contract upon which the claim is based, is a compliance with the statute; for such person or officer must be regarded as the proper medium for reaching the corporation, or as the one having its authority to receive such notice.
The court below found that, as matter of fact, the clerk received the attested account of Rankin & Oo. before that of any of the other sub-contractors was received. We can not say that finding was unwarranted by the evidence, and must therefore concur therein. It follows that Rankin & Co. have the prior right to that part of the fund due on the original contract; and, as the amount due them from Bearly is greater than the amouut due on that contract, that part of the fund will be exhausted in paying them.
The balance of the fund is due upon the contract for the frame privy. Upon this part of the fund, the Greenlees & Ransom Oo. and Edwin Long have the prior claim to the .amount that the work and materials in .their respective accounts went into that job. There is no specific lien upon the balance of the fund remaining due under this contract, •other than what has resulted from this suit; and, after pay ■ .ing the costs and the judgment in favor of Schwartz— which was not excepted to by the only party it affects— should be divided between all the sub-contractors not fully .paid, in proportion to the balance remaining due to each •of them after the applications before indicated.
It follows that the judgment in favor of Schwartz must ■be affirmed, and that in all other respects it must be reversed.

Judgment accordingly.

Scott, Chief Judge; Whitman, Weight, and Johnson, •JJ.,- concurred.